IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

JENNA B.,

        Plaintiff,

  v.                                Civil Action 3:25−cv−00126
                                    Judge Michael J. Newman
                                    Magistrate Judge Kimberly A. Jolson

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Jenna B., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Child Disability Insurance Benefits ("CDB") and Supplemental Security Income ("SSI"). The Undersigned **RECOMMENDS** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

I.      BACKGROUND

On October 30, 2018, Plaintiff protectively filed an application for CDB alleging disability beginning February 1, 2018, due to ADHD, major depressive disorder, and anxiety. (R. at 151−54, 181). Her application was denied initially and on reconsideration. She subsequently filed an application for SSI in September 2019, and this claim was escalated to the hearing level. (R. at 155–61, 872–77). On the subsequent application, Plaintiff also alleged disability due to PTSD, explosive disorder, panic attacks, insomnia, and self-harm. (R. at 908). The Administrative Law Judge, Andrew Sloss ("ALJ Sloss") held a telephone hearing on October 29, 2020. (R. at 38−59). ALJ Sloss denied Plaintiff's application in a written decision on December 10, 2020. (R. at 12−37).

After the Appeals Council denied review, Plaintiff filed a case in the United States District Court for the Southern District of Ohio. The Court remanded the case to the Commissioner. *See [Jenna B.] v. Comm'r of Soc. Sec.*, No. 3:21−cv−176 (S.D. Ohio September 23, 2022). (R. at 673–700). This matter was remanded by the Appeals Council on December 22, 2022. (R. at 701−05). Upon remand, ALJ Gregory G. Kenyon (the "ALJ") held a subsequent hearing via telephone on April 20, 2023 (R. at 615−40), and he issued a decision denying Plaintiff's application for benefits. (R. at 567−93).

After the Appeals Council denied review, Plaintiff filed suit with this Court on April 25, 2025 (Doc. 1), and the Commissioner filed the administrative record on June 26, 2025 (Doc. 7). The matter has been briefed and is ripe for consideration. (Docs. 8, 10, 11).

**A.    Relevant Statements to the Agency and Hearing Testimony**

The ALJ summarized Plaintiff's statement to the agency as follows:

[Plaintiff] alleges that she lacks the motivation to engage in work activities, and has such significant social anxiety that she is unable to interact in any effective way with others. She testified, however, that she is currently working on a part-time basis in a position that requires regular customer interaction, and although she alleged daily outbursts at customers, the undersigned notes that this is inconsistent with an ability to maintain this type of employment. As noted above, she also has been consistently observed as cooperative during examinations (see, for example, Exhibits 1F at 9, 33, 4F at 4, 9F, 13F at 14, 20F at 14, 21F at 191, 23F at 4), which indicates more than a baseline ability to interact with others in an appropriate manner. In addition, [Plaintiff] testified that she lives on her own in a house, and although she receives some help from family members, she is clearly able to maintain her household. [Plaintiff] argues that she has very significant concentration deficits, and while she did have difficulty staying on-topic during parts of the hearing, nothing in the record appears to support the notion that these deficits are more than moderate in nature, especially when controlled with appropriate and consistent medication usage (see Exhibit 25F).

(R. at 579–80).

2

**B.     Relevant Medical Evidence**

ALJ Kenyon summarized Plaintiff's medical records and symptoms as to her mental health impairments and found the paragraph B criteria are not satisfied as follows:

> In addition to medical evidence considered in the prior decision (see Exhibit 5A), [Plaintiff]'s mental impairments are substantiated by the April 2022 diagnoses of depression, anxiety, a panic disorder, post-traumatic stress disorder (PTSD), and attention-deficit/hyperactivity disorder (ADHD), given following a consultative psychological evaluation conducted at the request of the Division of Disability Determination (DDD) (Exhibit 23F at 6). On multiple occasions between at least January 2020 and April 2022, treatment providers including Scott M. Rush, LPC, and Rachel M. White, LPCC, diagnosed [Plaintiff] with recurrent and severe major depressive disorder with anxious distress, PTSD, and combined-type ADHD (see, for example, Exhibits 20F at 15, 21F at 7, 24F at 11). On multiple occasions between at least January 2020 and February 2023, Emily M. Freimuth, FNP-C, diagnosed [Plaintiff] with major depressive disorder, PTSD, and combined-type ADHD (see, for example, Exhibits 20F at 67, 160, 224, 307, 21F at 24). In June 2021, Christopher R. Jester, M.D., noted a final emergency department impression of depression when [Plaintiff] presented for a psychiatric evaluation due to suicidal ideation (Exhibit 22F at 8). In April 2022, Edward Hubach, D.O., assessed [Plaintiff] with a depressive disorder and ADHD (Exhibit 18F at 14).
>
> The limitations noted above are based on [Plaintiff]'s medically determinable severe mental impairments and the impacts they have on [Plaintiff]'s abilities in each of the paragraph B areas of functioning. Turning specifically to those areas, [Plaintiff] experiences, at most, a mild limitation in her ability to understand, remember, or apply information. In the prior decision, Judge Sloss found that [Plaintiff] has no limitation in this area (Exhibit 5A at 8). In a report following her consultative psychological evaluation, Dr. Arnold observed [Plaintiff]'s memory as intact, especially in the short term, and note that [Plaintiff] is able to "understand, remember, and carry out instructions, follow a conversation and can think abstractly and apply reason" (Exhibit 23F at 6). In the broader medical record, [Plaintiff]'s memory has been variously assessed and reported as good, intact, within normal limits, or negative for loss (see, for example, Exhibits 1F at 9, 3F at 4, 13F at 10, 14F at 12, 15F at 18, 20F at 65, 22F at 8), and as problematic (see, for example, Exhibits 20F at 13, 24F at 9). In a pair of function reports, one completed pursuant to the original applications, one completed pursuant to the subsequent ones, [Plaintiff] stated that she needs reminders to take care of her personal needs and grooming and to take her medications, and has a varying need of reminders to go places (Exhibits 3E, 34E). She is "ok" following simple written instructions, and has a variable ability to follow spoken instructions (*Id.*). She also has general difficulty with both memory and understanding (*Id.*).

Even giving deference to [Plaintiff]'s subjective complaints of difficulty, the fact that the vast majority of assessments and reports in the medical record indicate positive abilities leads the undersigned to find that [Plaintiff] has, at most, only a slight limitation in her ability to function in this area.

[Plaintiff] experiences a moderate limitation in her ability to interact with others. Judge Sloss found that [Plaintiff] has a mild limitation in this area (Exhibit 5A at 8). Dr. Arnold noted [Plaintiff]'s report of having limited social interactions, with those primarily being with family members, and reporting a preference for self-isolation and "a history of not interacting well with co-workers and supervisors" (Exhibit 23F at 6). In the broader medical record, [Plaintiff] has repeatedly been observed as pleasant, cooperative, and/or appropriately interactive during examinations (see, for example, Exhibits 1F at 9, 33, 4F at 4, 9F, 13F at 14, 20F at 14, 21F at 191, 23F at 4). In the function reports, [Plaintiff] stated that she will get anxious when leaving her home, and is easily frustrated and angry with others (Exhibits 3E, 34E). Despite this, she is able to go shopping in stores multiple times a week, and regularly spends time with both friends and family members in-person (*Id.*). Other than for shopping and religious services, however, she does not regularly go places (*Id.*). She has general difficulty getting along with others, including authority figures (*Id.*). In one function report, she reported having never lost a job because of workplace interpersonal difficulties, although she did report such a history in the other report (*Id.*). At the April 2023 hearing, [Plaintiff] testified that she lives alone. She is easily angered, especially by rude behavior, and has difficulty getting along with customers, as they "get on my nerves." This causes approximately daily outbursts while working, and can also be directed towards family members or her significant other. In deference to [Plaintiff]'s consistent subjective complaints, the undersigned finds that she has only a fair ability to function in this area. The repeated observations of [Plaintiff] as cooperative during examinations, along with her reported ability to get along with family members, friends, and a significant other, indicate that a more significant level of limitation is not present. [Plaintiff] experiences a moderate limitation in her ability to concentrate, persist, or maintain pace. Judge Sloss found that [Plaintiff] has a moderate limitation in this area (Exhibit 5A at 8).

Dr. Arnold observed [Plaintiff] as "able to sustain concentration and show persistence" on both simple and more complex tasks, although she "was somewhat distractible and fatigued" (Exhibit 23F at 6). In the broader medical record, [Plaintiff]'s attention and concentration have been variously assessed and reported as intact or within normal limits (see, for example, Exhibits 14F at 12, 15F at 18, 20F at 65, 21F at 31), and as problematic, diminished, or poor (see, for example, Exhibits 1F at 7, 2F at 5, 14F at 4). In the function reports, [Plaintiff] stated that she has a "very short" period during which she can pay attention, has general difficulties with both concentration and completing tasks, and does not typically finish things that she starts (Exhibits 3E, 34E). At the April 2023 hearing, [Plaintiff] testified that she has difficulty with concentration, focus, and staying on-task, and will get distracted or "zone out" a lot. The undersigned notes that [Plaintiff] also

4

had a number of instances during the approximately forty-five minute hearing where she needed questions repeated, apparently due to losing her train of thought. The undersigned finds that this represents only a fair ability to function in this area.

[Plaintiff] experiences a moderate limitation in her ability to adapt or manage herself. Judge Sloss found that [Plaintiff] has a moderate limitation in this area (Exhibit 5A at 8-9).

Dr. Arnold noted [Plaintiff]'s report of being "paralyzed by flashbacks," and of having a poor response to workplace pressures (Exhibit 23F at 7). Dr. Arnold noted [Plaintiff]'s attempts to adapt to her limitations through self-isolation (*Id.*). In the broader medical record, [Plaintiff]'s judgment and insight have been variously assessed as normal or age-appropriate (see, for example, Exhibits 2F at 5, 13F at 6, 12, 18F at 17, 19F at 10), and as fair or poor (see, for example, Exhibits 1F at 9, 13F at 18, 14F at 12, 20F at 124, 22F at 9, 24F at 105). In the function reports, [Plaintiff] stated that she can be "trigger[ed]" by loud noises, and is easily angered (Exhibits 3E, 34E). She does not handle either stress or changes in her routine well, as increased anxiety can cause panic attacks (*Id.*). At the April 2023 hearing, [Plaintiff] testified that she has a history of cutting herself, but has not done so in the past few months. She will get anxious while driving, gets "road rage" easily, and will cover hear ears and/or eyes when anxious, even while driving. Anxiety will also cause her to break out in rashes approximately every other day, as well as trigger multiple weekly panic attacks. [Plaintiff] has twice-daily crying spells, is often impulsive in both her spending and other actions, and has daily flashbacks and nightmares as a result of a history of abuse and being attacked by a dog. She often lacks the motivation to do things, and avoids going shopping by herself, although she is able to drive herself to work alone. [Plaintiff] also noted that she has some daily auditory hallucinations. The undersigned finds that the varying assessments indicate only a fair ability to function in this area.

(R. at 577–79).

C. The ALJ's Decision

The ALJ found that Plaintiff had not attained age 22 as of February 1, 2018, the alleged onset date, and has not engaged in substantial gainful activity since that date. (R. at 573–74). The ALJ determined that Plaintiff has the following severe impairments: major depression, anxiety disorder, post-traumatic stress disorder, attention-deficit/hyperactivity disorder. (R. at 574). Still, the ALJ found that, Plaintiff's impairments, either singly or in combination, do not meet or medically equal a listed impairment. (R. at 575).

5

>As to Plaintiff's residual functional capacity ("RFC"), the ALJ concluded:
>
>[Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: [Plaintiff] is limited to performing simple, routine, and repetitive tasks of between 1 and 3 steps. No more than occasional and superficial contact with supervisors and co-workers (superficial contact is defined as able to receive simple instructions, ask simple questions, and receive performance appraisals, but as unable to engage in more complex social interactions, such as persuading other people or resolving interpersonal conflicts); no contact with the general public. No fast-paced work or high production quotas. [Plaintiff] is limited to work which involves very little, if any, change in the job duties or the work routine from one day to the next.

(R. at 576).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. at 579).

The ALJ found that Plaintiff has no past relevant work. (R. at 582). Relying on the vocational expert's testimony, the ALJ found that, considering her age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff can perform at the medium exertional level, such as a kitchen helper, counter-supply worker and laundry worker. (R. at 582−83). He therefore concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from February 1, 2018, through the date of this decision (20 CFR 404.1520(g))." (R. at 583).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

6

support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III. DISCUSSION

In her Statement of Errors, Plaintiff contends that ALJ Kenyon erred in finding the medical source opinion of Joyce Parson, M.S.W./L.I.S.W. unpersuasive because his consistency analysis did not follow the Court's remand order and was not supported by substantial evidence (Doc. 8 at 8–9). Plaintiff also contends that ALJ Kenyon erred in finding the opinion of Emily Freimuth, PMNHP-BC persuasive because he failed to evaluate it for supportability and consistency. (*Id.* at 9–17). Essentially, Plaintiff argues that ALJ Kenyon gave too little credit to Ms. Parson's opinion and too much credit to Ms. Freimuth's opinion. She asks the Undersigned to find error in how the ALJ weighed the opinions. For the following reasons, the Undersigned declines to do so.

### A. Evaluation of Joyce Parson, M.S.W./L.I.S.W.'s Opinions

The Undersigned looks first to Ms. Parson's opinions, which ALJ Kenyon found unpersuasive. (R. at 580). Plaintiff argues that ALJ Kenyon's finding is inconsistent with the instruction of the remanding Court and unsupported by substantial evidence. (Doc. 8 at 8–9). The Undersigned disagrees.

7

The Court previously summarized Ms. Parson's opinions its September 22, 2022, Remand Order:

> Ms. Parson, a licensed independent social worker, submitted narrative reports in June 2019, February 2020, and November 2020. (Doc. 8-7, PageID 409-14, 419-20; Doc. 8-8, PageID 581-84.) Ms. Parson indicated that she began seeing Plaintiff on a weekly basis in June 2014, and she continued services via telehealth from January 2019 to December 2019. (Doc. 8-7, PageID 410, 419-20; Doc. 8-7, PageID 581.) Ms. Parson said that she subsequently terminated services when Plaintiff became "suicidal again," because she believed that "actively suicidal clients should not be seen via telehealth." (Doc. 8-8, PageID 581.)
>
> In the June 2019 report, Ms. Parson detailed the nature and symptoms of Plaintiff's conditions, which she listed as major depressive disorder, PTSD, ADHD, and generalized anxiety disorder. (*Id.* at PageID 413.) She explained that Plaintiff had struggled with depression since 2013 or 2014, and was taking medication but continued to experience mild to moderate symptoms. (*Id.*) She noted that Plaintiff had difficulty with "serious sleep problems, memory, motivation and decision making." (*Id.*) She attributed Plaintiff's PTSD to her upbringing, which included verbal and emotional abuse and a lack of other supports. (*Id.*) According to Ms. Parson, Plaintiff had a "hair trigger temper" that resulted in verbal outbursts. (*Id.*) ***With regard to Plaintiff's anxiety, Ms. Parson reported that Plaintiff had multiple fears and phobias," including a fear of trying new things. (*Id.*) Ms. Parson noted that Plaintiff had made some improvement with therapy, but stated that "with a complex mental health history and multiple fears and anxieties, it will take years to resolve some of her challenges." (*Id.* at PageID 414.) Ms. Parson noted that Plaintiff sometimes forgot appointments and struggled with "remembering and complying with behavioral goals." (*Id.*) Significantly, Ms. Parson explained that this behavior was "consistent with her mental health diagnoses." (*Id.*)
>
> Ms. Parson opined that Plaintiff's conditions "make it highly unlikely that she could successfully work." (Doc. 8-7, PageID 414.)
> ***
> In her February 2020 report, Ms. Parson again summarized Plaintiff's conditions and treatment history. (Doc. 8-7, PageID 419.) Consistent with the June 2019 report, Ms. Parson attributed Plaintiff's PTSD to her upbringing, which Ms. Parson described as an "abusive and explosive home life." (*Id.* at PageID 419-20). She noted that Plaintiff's parents "did not keep her on medications consistently and refused medication for ADHD." (*Id.* at PageID 419.) Ms. Parson stated that Plaintiff's depression was not yet stable on medication. (*Id.* at PageID 420.) She noted that Plaintiff was "emotionally immature, made impulsive decisions, and used poor judgment in life." (*Id.* at PageID 419.) Ms. Parson again noted Plaintiff's "hair trigger temper," which she opined "impair[ed] her ability to take direction from others and to work compatibly with others." (*Id.*) Ms. Parson concluded: "It will be sometime before [Plaintiff] is stable enough for a work environment. She

8

> has many wounds from which to heal and numerous obstacles to overcome. I do believe that after some months of intensive treatment and the appropriate medications, that she will eventually be able to go for advanced schooling or have gainful employment." (*Id.* at PageID 420.)
>
> In her final report from November 2020, Ms. Parson again summarized Plaintiff's impairments and treatment history. (Doc. 8-8, PageID 581-82.) Ms. Parson noted she no longer had access to records from Clearing Paths Therapeutic Services, where she first treated Plaintiff. (*Id.* at PageID 582.) Ms. Parson reported observing the following signs and symptoms: poor memory; appetite disturbance with weight change; sleep disturbance; mood disturbance; emotional lability; recurrent panic attacks; anhedonia or pervasive loss of interests; paranoia or inappropriate suspiciousness; feelings of guilt/worthlessness; difficulty thinking or concentrating; suicidal ideation or attempts; social withdrawal or isolation; blunt, flat, or inappropriate affect; illogical thinking; decreased energy; obsessions or compulsions; intrusive recollections of a traumatic experience; persistent irrational fears; generalized persistent anxiety; hostility or irritability; and pathological dependence or passivity. (*Id.* at PageID 581.)
>
> Ms. Parson stated that Plaintiff "did not make substantial progress" in treatment and often forgot to practice or became confused about what she learned during therapy sessions. (*Id.* at PageID 582.) She said that Plaintiff experienced "frequent memory problems and at times irrational thinking," which caused her to miss class, work, or other activities due to panic attacks. (*Id.*) Ms. Parson reported that Plaintiff "struggle[d] with any form of criticism or correction" and could "become aggressive, both verbally and potentially physically." (*Id.*) Ms. Parson opined that this behavior created problems with relationships, "including with supervisors and coworkers." (*Id.*) She noted that Plaintiff had tried to work at a job but that "the stress and the frequent triggers from her trauma prevented her from maintaining it." (*Id.* at PageID 583.) Ms. Parson opined that Plaintiff experienced marked restrictions in activities of daily living and was extremely limited in maintaining social functioning and maintaining concentration, persistence, and pace. (*Id.*) She also opined to marked episodes of deterioration or decompensation. (*Id.*)

(R. 678–682.)

ALJ Sloss, the first ALJ, found Ms. Parson's opinion unpersuasive. (R. at 30). He concluded that "the objective evidence does not support the extent of the alleged symptoms and limitations." (R. at 28). The Court took issue with this conclusion because the ALJ reasoned that "panic attacks and crying spells" were not prominent in Ms. Parson's treatment notes. (*Id.*). But the Court pointed to Ms. Parson's reports, which showed Plaintiff "often missed class, work or

9

other activities due to panic attacks. She left one job because she had a panic attack and was embarrassed." (R. at 695 (citing R. at 548)). Thus, on judicial review, the Court remanded the decision because (1) ALJ Sloss erred in failing to evaluate the persuasiveness of Ms. Parson's June 2019 opinions, and (2) ALJ Sloss's consistency evaluation for Ms. Parson's February and November 2020 opinions was unsupported by substantial evidence. (R. at 692–97).

On remand, ALJ Kenyon remained "unpersuaded" by Ms. Parson's opinions. (R. at 580). He first noted that Ms. Parson "opined on the ultimate matter reserved to the Commissioner." (*Id.* (citing R. at 387)). Notwithstanding this note, the ALJ claimed Parson's recommendations were "extreme and inconsistent with both the record and [Plaintiff's] subjective complaints." (*Id.*). He claimed that Parson's prescription that Plaintiff had "extreme" social functioning limitations was inconsistent with records that demonstrated Plaintiff was cooperative and could get along with friends and family. (*Id.* (citing R. at 549); *see, e.g.*, R. at 1010, 1067, 1083)). Contradicting Plaintiff's contention that she faces daily outbursts of anger in her part-time stocker position at Five Below, the ALJ pointed to Plaintiff's ability to maintain that position. (*Id.* (citing R. at 623–24)). He explained that Plaintiff "would presumably be terminated if she were having outbursts at customers with her reported frequency." (*Id.* (citing R. at 629)). All this informed the ALJ that Plaintiff's limitations were short of "extreme." (*Id.*). The ALJ additionally found that Parson failed to provide "clear function-by-function limitation recommendations." (*Id.* (citing R. at 547–49)). Instead, the ALJ said that Parson turned to "personality traits, such as [Plaintiff's] sensitivity to criticism, as clear psychological necessities, which is inconsistent with [Plaintiff's] overall level of functioning." (*Id.* (citing R. at 547)).

Plaintiff argues ALJ Kenyon erred because his consistency analysis does not comply with the remand Order and is again unsupported by substantial evidence. (Doc. 8 at 8–9). But on

10

remand, ALJ Kenyon cured the defects of the previous ALJ. First, he assessed Ms. Parson's June 2019 opinion that the previous ALJ neglected. (R. at 580 (citing R. at 380–81)). And Plaintiff does not dispute this. Then, ALJ Kenyon supported his consistency analysis with substantial evidence.

The Undersigned now turns to that evidence. As mentioned, ALJ Kenyon found that Parson's indication of "extreme" social functioning limitations was inconsistent with medical records. (*Id.* (citing R. at 549)). Indeed, as the ALJ noted, Plaintiff's medical records consistently reflect that she exhibited a cooperative and appropriate demeanor. (*See, e.g.,* R. at 457). Moreover, the ALJ found the proposed limitations inconsistent with Plaintiff's subjective reports that she is able to get along with friends and family members. (R. at 580; *see, e.g.*, R. at 1010, 1067, 1083)). This too is reflected in the record. (*See, e.g.,* R. at 1589 ("The claimant does spend time with other people, specifically family and can tolerate these interactions for up to an hour or more."), 1601 ("Client identified . . . spending time with her family as meaningful activities."), 1615 ("States when on medication . . . gets joy out of spending time with friends and family.")). The ALJ also found that Parson's characterization of Plaintiff's anger issues was inconsistent with Plaintiff's testimony at the 2023 hearing. (R. at 580). Specifically, Ms. Parson repeatedly noted that Plaintiff is prone to outbursts of anger that could result in hostile exchanges, difficulties taking direction from others, and eventual termination. (R. at 380, 549). To these points, the ALJ turned to Plaintiff's ability to maintain a job at Five Below for a few months by the time of the hearing. (*Id.* (citing R. at 623–24)). Though Plaintiff testified that she has anger outbursts at customers on a daily basis, the ALJ reasoned Plaintiff would have been fired—per Ms. Parson's own reasoning— had this been true. (*Id.* (citing R. at 629)). The Undersigned agrees. All this shows the ALJ's consistency analysis is supported by substantial evidence.

11

Nevertheless, Plaintiff argues ALJ Kenyon erred in finding Parson's opinion unpersuasive because he is bound by the Court's holding that ALJ Sloss's consistency analysis was unsupported by substantial evidence. (Doc. 8 at 8). Not so. "[A]n ALJ will not err by considering new issues that were not previously considered by the district court, so long as the consideration is not 'inconsistent with' the Court's Remand Order." *Wyatt v. Comm'r of Soc. Sec.*, No. 1:16-CV-938, 2017 WL 3224666, at *6 (S.D. Ohio July 31, 2017), *report and recommendation adopted*, No. 1:16-CV-938, 2017 WL 4349115 (S.D. Ohio Sept. 29, 2017). Here, the Court ordered the ALJ on remand to "further develop the record as necessary, particularly as to the opinion of [Ms. Parson] and evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's regulations and rulings and governing case law." (R. at 698). As discussed above, this is exactly what ALJ Kenyon did. Moreover, ALJ Kenyon's consistency analysis maintained a different focus than that of ALJ Sloss. Where the Court remanded ALJ Sloss's opinion because his conclusion about Plaintiff's anxiety was unsupported by substantial evidence, ALJ Kenyon's consistency analysis did not discuss whether Parson's findings about Plaintiff's anxiety was inconsistent with the record. (R. at 580). Instead, as Plaintiff concedes, ALJ Kenyon focused only on the social functioning limitations outlined in Parson's report. (*Id.* (citing R. at 547)). This discussion, as mentioned, is supported by substantial evidence. Ultimately, ALJ Kenyon's finding discusses a new issue not considered by the district court, and that finding is consistent with the Court's order that the ALJ evaluate this opinion under applicable regulations and case law.

Plaintiff also argues that ALJ Kenyon's analysis is not supported by substantial evidence because he focused only on the evidence of Plaintiff's social functioning, and he failed to provide support for why he discounted Parson's other opinions. (Doc. 8 at 8–9). Particularly, she points

to Parson's findings that Plaintiff experienced "recurrent" panic attacks, which she says ALJ Kenyon did not discuss. (*Id.* at 9). But when an ALJ evaluates the persuasiveness of a medical opinion, "there is no requirement to cite to every piece of evidence or conclusion." *Robinson v. Comm'r of Soc. Sec.*, No. 22-1397, 2022 WL 17168444, at *2 (6th Cir. Nov. 22, 2022). ALJ Kenyon was not required to delve into each of Parson's conclusions, and thus, did not err by declining to evaluate Parson's other conclusions. Rather, the consistency analysis he conducted is supported by substantial evidence, as discussed above.

Accordingly, Plaintiff's assignment of error is without merit.

**B.      Evaluation of Emily Freimuth, PMNHP-BC's Opinion**

Turning now to psychiatric nurse practitioner, Emily Freimuth. Unlike Ms. Parson, Ms. Freimuth found Plaintiff's mental impairments would not significantly impact her job performance. (*See* R. at 1701–03). As described in further detail below, ALJ Kenyon found this opinion persuasive, but Plaintiff says he failed to show his work. (Doc. 8 at 9–17). Specifically, Plaintiff contends ALJ Kenyon failed to evaluate the opinion for supportability and consistency. (*Id.*). The Undersigned again disagrees.

A plaintiff's RFC "is defined as the most [she] can still do despite the physical and mental limitations resulting from [her] impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1545(a)(1). The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings.[1] 20 C.F.R. § 404.1513(a)(1)–(5). For medical opinions, an ALJ is not required to "defer

---

[1] The regulations define prior administrative findings:

or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must weigh the opinion with various factors in mind. *See* 20 C.F.R. § 404.1520c(c)(1)–(5). Among them, supportability and consistency are the most important, and the ALJ must explain how they were considered. 20 C.F.R. § 404.1520c(b)(2).

When evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 416.920c(c)(1). When evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(2). And although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id.*

The ALJ's role is to articulate how she considered medical opinions and how persuasive she found the medical opinions to be. *Holston v. Saul*, No. 1:20−CV−1001, 2021 WL 1877173, at *11 (N.D. Ohio Apr. 20, 2021), *report and recommendation adopted*, No. 1:20 CV 1001, 2021 WL 1863256 (N.D. Ohio May 10, 2021). The role of the Court is not to reweigh the evidence, but to make sure the ALJ considered the proper factors and supported her conclusion with substantial evidence. *Id.* at *14.

Between January 2020 and February 2023, Ms. Freimuth diagnosed Plaintiff with major depressive disorder, PTSD, and combined-type ADHD. (R. at 1063, 1156, 1220, 1303). Based

---

A prior administrative finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (*see* § 416.1400) in your current claim based on their review of the evidence in your case record . . .

§ 404.1513(a)(2), (5).

14

on her treatment, Ms. Freimuth opined in April 2023, that Plaintiff is moderately limited in her ability to initiate and perform a task that one understands how to do and to complete tasks in a timely manner (R. at 1701). Ms. Freimuth opined that Plaintiff would be able to perform regular, full-time competitive work on a sustained basis without missing work more than two times per month, being off task more than 15% of the workday, or needing additional breaks (R. at 1702–03). She also stated that Plaintiff's past reports of fatigue were not likely attributable to her mental health impairments, noting that her mood symptoms were "well managed." (R. at 1703).

ALJ Kenyon found Ms. Freimuth's opinion persuasive. He first commented on the length of time Ms. Freimuth has treated Plaintiff, stating that after more than three years, "Ms. Freimuth has significant insight into [Plaintiff]'s current level of functioning. (R. at 581). The ALJ then compared this relationship to the treatment relationship between Plaintiff and Ms. Parson, which began when Plaintiff was a child, "and stopped some time in 2020." (*Id.* (citing R. at 387)). The ALJ noted that according to Ms. Freimuth, Plaintiff "has a few areas of functioning with moderate limitation, specifically and especially in the area of maintaining attention and concentration, but that that these would not cause an unreasonable amount of off-task time or absenteeism." (*Id.* (citing R. at 1701–03)). The ALJ then found these recommendations "largely consistent" with Plaintiff's subjective complaints. (*Id.*). The ALJ also found the opinion to be supported by internal note that Plaintiff's "mood symptoms are well-managed." (*Id.*).

### 1. *Supportability*

First, Plaintiff contends that in finding Ms. Freimuth's opinion persuasive, the ALJ failed to evaluate it for supportability. (Doc. 8 at 12). The Undersigned disagrees.

Supportability requires the ALJ to evaluate how much the medical conclusions are supported internally, as well as by other treatment notes and exams by the evaluating physician. 20 CFR 404 § 1520c(c)(1); *Michael R. v. Comm'r of Soc. Sec.*, No. 2:22-CV-4117, 2023 WL

15

6160626, at *5 (S.D. Ohio Sept. 21, 2023) ("The ALJ properly evaluated the supportability of Ms. Riffle's opinion given the lack of objective evidence in the opinion itself and when compared to Ms. Riffle's past treatment notes."), *report and recommendation adopted*, No. 2:22-CV-4117 WL 688754 (S.D. Ohio Feb. 20, 2024); *see also Thomas J. v. Comm'r of Soc. Sec.*, No. 1:24-CV-00048, 2024 WL 3841221, at *10 (S.D. Ohio Aug. 15, 2024). The ALJ did that.

Here, the ALJ determined that Freimuth explained her conclusions. (R. at 581). Ms. Freimuth concluded that Plaintiff had moderate limitations with regard to maintaining attention and concentration, but that Plaintiff could also "perform regular, full time, competitive work . . . on a sustained basis without missing work more than two times per month, being off task more than 15% of the workday, or needing additional breaks." (R. at 581 (citing R. at 1701–03)). The ALJ found this opinion to be supported "especially" by Ms. Freimuth's separate note that Plaintiff's "mood symptoms are well managed." (*Id.* (citing R. at 1703)). In doing so, the ALJ essentially found that Ms. Freimuth provided sufficient justification for her conclusions, which is all the ALJ needed to do. *See Molly H. v. Comm'r of Soc. Sec.*, No. 3:24-CV-00181, 2025 WL 2630681, at *6 (S.D. Ohio Sept. 12, 2025) ("Therefore, an ALJ's supportability analysis addresses whether a medical professional has sufficient justification for their *own* conclusions.") (emphasis in original). Although brief, the ALJ conducted a sufficient supportability analysis here. *See, e.g.*, *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) (finding that although the ALJ "might have explained at even greater length why she did not accord Dr. Bell's opinion controlling weight," it was enough that she "addressed the factors the regulation required her to consider, and she provided good reasons at each step"); *Newman v. Kijakazi*, No. CV 5:22-59-KKC, 2023 WL 2700700, at *2 (E.D. Ky. Mar. 29, 2023) (noting the ALJ's supportability analysis

16

did not need to be lengthy) (quoting *Terhune v. Kijakazi*, CIVIL ACTION NO. 3:21-37-KKC, 2022 WL 2910002, at *3 (E.D. Ky. July 22, 2022)).

Still, Plaintiff contends the ALJ erred because he "needed to evaluate what Freimuth said she based her opinion on." (Doc. 8 at 12). But Plaintiff construes supportability too narrowly. While she is correct that an ALJ can address supportability by discussing the evidence the opining physician relied upon, *see Reusel v. Comm'r of Soc. Sec.*, No. 5:20-CV-1291, 2021 WL 1697919, at *7 n. 6 (N.D. Ohio Apr. 29, 2021), the ALJ does not have to do so. Rather, an ALJ conducts a sufficient supportability analysis by evaluating, for example, the internal support offered within a medical opinion. *See, e.g.*, *Molly H.*, 2025 WL 2630681, at *6. And as mentioned, this is what the ALJ did.

Further, Plaintiff argues the ALJ "conflated" supportability and consistency because the ALJ found Freimuth's internal notation "largely consistent" with Freimuth's opinion, as opposed to saying it supported the opinion. (Doc. 8 at 12). But the ALJ is not required to use the magic words "supportability" or "consistency" in order to conduct the proper respective analyses. *Jones v. Comm'r of Soc. Sec.*, No. 1:25-CV-515, 2025 WL 2701333, at *9 (N.D. Ohio Sept. 23, 2025) ("But just because the ALJ did not use the word 'consistent' does not mean that the ALJ erred, because the ALJ 'need not specifically use the terms supportability or consistency in his analysis.'") (quoting *Cormany v. Kijakazi*, No. 5:21-cv-933, 2022 WL 4115232, at *3 (N.D. Ohio Sept. 9, 2022); *Newman*, 2023 WL 2700700, at *2. And failing to say "supportability" does not mean the ALJ failed to analyze supportability, so long as the ALJ provided "enough context for the court to trace their reasoning." *Reusel*, 2021 WL 1697919, at *7 n. 6 ("[T]he law does not require ALJ[s] to use perfect diction."). As demonstrated above, the Undersigned was able to trace

17

the ALJ's reasoning. And it was the ALJ's reference to the internal note—not his categorization of that note as "largely consistent"—that informed the Undersigned's decision.

Accordingly, Plaintiff's contention of error is without merit.

### 2. Consistency

Next, Plaintiff contends the ALJ failed to evaluate Freimuth's opinion for consistency in finding it persuasive. (Doc. 8 at 12). Again, the Undersigned disagrees.

Unlike supportability, which requires the ALJ to compare medical conclusions to the evidence offered by the reporting physician herself, consistency requires the ALJ to compare the report's conclusions to the evidence offered in other sources in the record. 20 CFR 404 § 1520c(c)(2); *see also David W. v. Comm'r of Soc. Sec.*, No. 3:24-CV-00255, 2025 WL 841074, at *7 (S.D. Ohio Mar. 18, 2025) ("Here, the ALJ clearly evaluated the consistency of Dr. Swedberg's opinion by comparing his findings to other medical evidence and Plaintiff's subjective accounts of his symptoms. That is all the ALJ had to do."). This is what the ALJ did.

The ALJ first found Plaintiff's argument that she has "very significant concentration deficits" to be inconsistent with Freimuth's opinion, that listed no more than moderate difficulties paying attention. (R. at 580 (citing R. at 194 (self-reporting that she can only pay attention for a "very short timeframe"), 1701)). Then, the ALJ found other portions of Plaintiff's subjective reports to be consistent with Ms. Freimuth's recommendation that Plaintiff would be able to "perform regular, full time, competitive work . . . on a sustained basis without missing work more than two times per month, being off task more than 15% of the workday, or needing additional breaks." (R. at 581 (citing R. at 1702–03; R. at 624 (testifying that she called out of work twice per month, and that she was able to work twenty hours per week in four-to-six-hour shifts))). Comparing Ms. Freimuth's opinion to record evidence in this way was all the ALJ had to do under the relevant regulations. *David W.*, 2025 WL 841074, at *7.

Still, Plaintiff argues the ALJ failed to perform an adequate consistency analysis because the ALJ failed to sufficiently explain his reasoning. (Doc. 8 at 13). But again, Plaintiff articulates a standard that is too high. All the ALJ was required to do was to "consider how this opinion compared to the other medical evidence of record." *Jones*, 2025 WL 2701333, at *9. And, as discussed above, the ALJ did exactly that. All told, the ALJ's opinion, read holistically, demonstrates that he sufficiently analyzed Ms. Freimuth's opinion for consistency. *See Perkins v. Comm'r of Soc. Sec.*, No. 1:20-CV-554, 2021 WL 3722772, at *7 (S.D. Ohio Aug. 23, 2021) ("Reading the opinion as a whole, the ALJ fairly described the . . . lack of consistency for Ms. Smith's opinions."). The Undersigned finds no error.

## IV.   CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors (Doc. 8) and **AFFIRM** the Commissioner's decision.


Date: December 17, 2025          */s/ Kimberly A. Jolson*
                                  KIMBERLY A. JOLSON
                                  UNITED STATES MAGISTRATE JUDGE

**PROCEDURE ON OBJECTIONS**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).